IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

ANDREW J. BILLUPS, III,
Plaintiff,

v.  Civil No. 3:19cv646 (DJN)

UNITED STATES OF AMERICA,
Defendant.

**MEMORANDUM OPINION**

Plaintiff Andrew J. Billups, III ("Plaintiff"), brings this action against the United States of America ("Defendant") pursuant to the Federal Tort Claims Act (the "FTCA" or "Act"), 28 U.S.C. §§ 1346, 2671 *et seq.*, for injuries sustained when an employee of the United States Postal Service ("USPS") sounded a modified horn on his vehicle while Plaintiff stood in close proximity to it. This matter comes before the Court on Defendant's Motion to Dismiss (ECF No. 9), moving to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim pursuant to Rule 12(b)(6). For the reasons set forth below, the Court GRANTS Defendant's Motion to Dismiss (ECF No. 9) and DISMISSES WITH PREJUDICE all claims by Plaintiff for direct liability against Defendant and DISMISSES WITHOUT PREJUDICE all claims by Plaintiff for vicarious liability against Defendant.

### I.  BACKGROUND

In resolving a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court will accept Plaintiff's well-pleaded factual allegations as true, though the Court need not accept Plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover,

when, as here, a defendant "challenges the factual predicate of subject matter jurisdiction, [a] trial court may then go beyond the allegations of the complaint" to determine if there are facts that support the jurisdictional allegations. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (internal quotations and citations omitted). Based on these standards, the Court accepts the following facts.

A. **Factual Background**

On September 13, 2017, Plaintiff visited the USPS office at 239 North Main Street, Kilmarnock, Virginia 22482 (the "Post Office"). (Compl. (ECF No. 1) ¶ 7.) Plaintiff parked his vehicle near a pickup truck owned and controlled by Ronald Cain ("Cain"), who the USPS employed as a custodian at the Post Office. (Compl. ¶¶ 8-10.) Cain was on duty at the time of the incident. (Compl. ¶ 11.) Cain had backed his truck into its parking space so that the grill of the truck faced the parking lot. (Compl. ¶ 12.) Cain had modified the truck's horn or alarm to create an unusually loud noise. (Compl. ¶ 13.)

As Plaintiff exited his vehicle and stood approximately ten feet from Cain's truck, he heard a loud horn blast emanating from the truck. (Compl. ¶ 14.) Plaintiff approached the truck to examine the grill and determine the source of the loud noise. (Compl. ¶ 15.) As Plaintiff approached the truck and bent down to look at the truck's grill, and while he stood approximately five to six feet from the truck, Cain caused the loud alarm or horn to sound a second time. (Compl. ¶¶ 15-16.) Plaintiff immediately began to experience ringing in both of his ears, as well as moderate deafness. (Compl. ¶ 17.) Because Plaintiff knew Cain from his regular visits to the Post Office, he attempted to locate Cain inside the Post Office to no avail. (Compl. ¶¶ 18-19.) Plaintiff returned to the Post Office several days later and noticed that the truck's alarm activated again while he stood approximately twenty feet away. (Compl. ¶ 20.)

On or about September 30, 2017, Plaintiff continued to experience bilateral ringing and deafness in his ears and went to the Post Office to investigate the cause of his problems. (Compl. ¶ 21.) At the Post Office, Plaintiff spoke with a USPS employee, who asked him to return on October 2, 2017, to speak with the postmistress, Mildred San Juan ("San Juan"). (Compl. ¶ 22.) Plaintiff returned to the Post Office on October 2, and Cain approached him in the parking lot. (Compl. ¶¶ 23-24.) Cain admitted to causing the truck's alarm to activate using the alarm feature on his key remote control. (Compl. ¶ 25.) Cain explained that at least two of his co-workers watched Plaintiff react to the alarm sound through a hole cut in the venetian blinds inside the Post Office. (Compl. ¶ 26.) Cain indicated that he sounded the alarm on his truck as a practical joke. (Compl. ¶ 28.)

After speaking with Cain in the parking lot, Plaintiff entered the Post Office and met with San Juan. (Compl. ¶ 29.) San Juan apologized to Plaintiff and told him that she would meet with Cain and other members of the staff to review and update their customer service training. (Compl. ¶ 30.) San Juan later provided Plaintiff with contact information for the USPS's Tort Claims Coordinator. (Compl. ¶ 31.) Plaintiff sustained acoustical trauma to both of his ears, and physicians diagnosed him with permanent and bilateral high-frequency hearing loss and tinnitus. (Compl. ¶¶ 38-39.) In October 2018, Plaintiff, through counsel, presented an administrative claim for damages to the USPS, which the USPS denied by a letter dated May 21, 2019. (Compl. ¶¶ 2-3.) Plaintiff now brings the instant suit.

**B.    Plaintiff's Complaint**

On September 5, 2019, Plaintiff filed suit in this Court, alleging that Cain had a habit of activating the alarm on his truck as customers passed by. (Compl. ¶ 32.) Plaintiff alleges that Cain's supervisors and co-workers knew of and even participated in Cain's habit, rendering it

3

foreseeable to them that his conduct created a danger of harming customers. (Compl. ¶¶ 35-37.) Plaintiff alleges several torts that proximately caused his injuries, namely: (1) Cain's negligent activation of his truck horn; (2) negligent supervision of Cain; (3) negligent training of Cain; and, (4) negligent retention of Cain. (Compl. ¶ 40.) Plaintiff seeks up to $3 million in monetary damages for the physical, mental and economic harm caused by these alleged torts. (Compl. ¶ 41.)

### C. Defendant's Motion to Dismiss

On November 27, 2019, Defendant filed its Motion to Dismiss (ECF No. 9), moving to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim pursuant to Rule 12(b)(6). In support of its Motion, Defendant argues that the United States has not waived its sovereign immunity as to Plaintiff's claims, because 28 U.S.C. § 2680(h) explicitly preserves the United States' sovereign immunity for "[a]ny claim arising out of assault [or] battery." (Mem. in Supp. of Def.'s Mot. to Dismiss ("Gov't Mem.") (ECF No. 10) at 5.) Although Plaintiff describes Cain's conduct as negligent, Defendant contends that substantively Plaintiff's claims arise from Cain's intentional conduct and, therefore, the FTCA's intentional tort exception applies. (Gov't Mem. at 6-8.) Defendant further maintains that Plaintiff's claims for negligent supervision, training and retention by Cain's supervisors must also fail, because Cain's intentional conduct underlies those claims. (Gov't Mem. at 8-9.) And Defendant argues that the independent-duty exception espoused by the Supreme Court in *Sheridan v. United States*, 487 U.S. 392 (1988), does not rescue Plaintiff's claims, because Plaintiff can point to no independent duty owed by the USPS to Plaintiff. (Gov't Mem. at 9-13.)

4

Alternatively, Defendant argues that the Court should dismiss Plaintiff's negligent supervision, training and retention claims under the FTCA's discretionary function exception. (Gov't Mem. at 13.) Defendant contends that the decisions related to the supervision, training and retention of Cain fall under the USPS's statutory right to manage its own employees and thus within the discretionary functions of USPS management. (Gov't Mem. at 13-14.)

Finally, should the Court decide that it may exercise jurisdiction over Plaintiff's claims, Defendant argues that the face of the Complaint establishes that Plaintiff's contributory negligence acts as a complete bar to recovery under Virginia law. (Gov't Mem. at 14-15.) Defendant maintains that reasonable minds cannot differ on whether Plaintiff's decision to approach the truck and bend down to look at the truck's grill constituted contributory negligence, so the Court may decide the issue as a matter of law. (Gov't Mem. at 15.) Moreover, Defendant reiterates that Plaintiff has failed to state a claim of independent negligence by the USPS, because the USPS owed no duty to Plaintiff independent of its vicarious liability for Cain's alleged negligence. (Gov't Mem. at 15-16.) And Defendant asks the Court to dismiss Plaintiff's negligent supervision, training and retention claims, because Virginia does not recognize a duty to properly supervise or train an employee and because Plaintiff fails to plead sufficient facts to support his negligent retention claim. (Gov't Mem. at 16-17.)

Plaintiff filed his Response to Defendant's Motion on December 16, 2019, (Pl.'s Mem. in Opp. to Def.'s Mot. to Dismiss ("Pl.'s Resp.") (ECF No. 14)), and Defendant filed its Reply on December 23, 2019, (Reply Mem. in Supp. of Def.'s Mot. to Dismiss ("Gov't Reply") (ECF No. 15)), rendering Defendant's Motion now ripe for review.

## II. STANDARD OF REVIEW

A motion made pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the court's jurisdiction over the subject matter of the complaint. A defendant moving for dismissal for lack of subject matter jurisdiction may either attack the complaint on its face, asserting that the complaint "fails to allege facts upon which subject matter jurisdiction can be based," or, as here, may attack "the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *White v. CMA Const. Co., Inc.*, 947 F. Supp. 231, 233 (E.D. Va. 1996) (internal citations omitted). In either case, the plaintiff bears the burden of proof to establish jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The Court must dismiss an action if it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve contests surrounding the facts, determine the merits of a claim or address potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, the Court will accept a plaintiff's well-pleaded allegations as true and view the facts in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint or counterclaim

must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a complaint or counterclaim must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. And the facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

## III. ANALYSIS

Because Defendant's jurisdictional challenge determines the Court's authority to consider the merits of Plaintiff's claims, the Court will address that challenge first. *See Docs Billing Sols., LLC v. GENETWORx LLC*, 2018 WL 4390786, at *2 (E.D. Va. Aug. 30, 2018) (noting that jurisdictional challenges — in that case, a motion to remand pursuant to a forum selection clause — should take precedence over other motions (citing *Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 680 (4th Cir. 2018)). Only if the Court can exercise subject matter jurisdiction over Plaintiff's claims will the Court consider Defendant's 12(b)(6) arguments.

### A. The Court May Not Exercise Subject Matter Jurisdiction Over Plaintiff's Claims.

Absent an explicit statutory waiver, sovereign immunity shields the United States from civil suits. *Kerns*, 585 F.3d at 194. In enacting the FTCA, Congress waived sovereign immunity for certain torts committed by federal employees. *Id.* (citing *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). Specifically, the FTCA allows plaintiffs to obtain monetary relief for injuries "caused

7

by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1).

However, the FTCA provides certain exceptions to this waiver of sovereign immunity, including for "[a]ny claim arising out of assault, battery" or other specified intentional torts. § 2680(h). This exception "unquestionably . . . bar[s] all claims based *entirely* on assault and battery." *Sheridan*, 487 U.S. at 398 (emphasis supplied). But the exception will not bar claims when the "basis for Government liability . . . is entirely independent of [the tortious actor's] employment status." *Id.* at 401. That is, plaintiffs may rely on the FTCA to obtain relief against the Government if the law of negligence of the state in which the tort occurred would permit recovery against private persons in the same position, regardless of the intentional tortfeasor's employment status or state of mind. *Id.* at 401, 403. Ultimately, federal courts lack jurisdiction to entertain claims that fall under § 2680(h). *Summers v. United States*, 480 F. Supp. 347, 349 (D. Md. 1979) (citations omitted).

With these principles in mind, Plaintiff "concedes that his direct liability theories [for negligent supervision, training and retention] are no longer tenable under Virginia law . . . and abandons those claims." (Pl.'s Resp. at 2.) However, he maintains that Defendant remains vicariously liable for Cain's conduct, because that conduct did not amount to an assault or battery under Virginia law. (Pl.'s Resp. at 2-6.) Accordingly, the Court will cabin its analysis to whether Cain's alleged conduct sounds in assault or battery and thus falls under § 2680(h). The Court determines the nature of Cain's conduct based on the law of the place where the conduct occurred — in this case, Virginia. § 1346(b); *United States v. Muniz*, 374 U.S. 150, 153 (1963). Importantly, "[i]t is the substance of the claim and not the language used in stating it which controls." *Gaudet v. United States*, 517 F.2d 1034, 1035 (5th Cir. 1975); *see United States v.*

8

*Neustat*, 366 U.S. 696, 710 (1961) (barring negligence claim, because it "arose out of" the excluded tort of misrepresentation).

In Virginia, "[t]he tort of assault consists of an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery." *Koffman v. Garnett*, 574 S.E.2d 258, 261 (Va. 2003) (citations omitted). By comparison, "[t]he tort of battery is an unwanted touching which is neither consented to, excused, nor justified." *Id.* (citations omitted). "Although these two torts go together like ham and eggs, the difference between them is that between physical contact and the mere apprehension of it. One may exist without the other." *Id.* (internal quotations and citations omitted).

Plaintiff argues that Cain's alleged conduct does not constitute assault or battery, because his allegations do no support recovery under those torts. (Pl.'s Resp. at 3-6.) Virginia has not explicitly recognized battery or assault based on soundwaves, and Plaintiff warns the Court against accepting Defendant's theory that assault and battery may be committed through soundwaves. (Pl.'s Resp. at 3-6.) But the Court need not determine that Virginia would recognize that an assault or battery may be committed through soundwaves to find Plaintiff's claims barred. Indeed, § 2680(h) does not require the Court to examine Plaintiff's likelihood of success under either a negligence or intentional-tort theory and allow him to proceed on the route with the best chance of recovery. Rather, the Court must ask whether Plaintiff's allegations in fact "arise out of" assault or battery. *Gaudet*, 517 F.2d at 1035; *see Edwards v. United States*, 211 F. Supp. 3d 234, 237 (D.D.C. 2016) (noting that "[j]urisdictional defects cannot simply be eliminated by creative pleading" and that trial courts must look to what a plaintiff pleads "in reality" (internal quotations and citations omitted)). Importantly, the Fourth Circuit has

instructed that "the 'arising out of' language is construed rather broadly to avoid permitting plaintiffs to sue the United States under theories that are not cognizable." *Popovic v. United States*, 175 F.3d 1015, at *3 (4th Cir. 1999). The Court finds that Plaintiff's claims arise out of assault or battery, even if such claims would fail, and thus fall within § 2680(h)'s jurisdictional bar.

As the Virginia Supreme Court noted in *Mayr v. Osborne*, an "important difference between battery and negligence is that battery in tort law is exclusively an intentional tort." 795 S.E.2d 731, 736 (Va. 2017) (internal quotations and citations omitted). "Intent in this context means (a) that the actor engaged in volitional activity and (b) that he intended to violate the legally protected interest of another in his person. Negligence, in contrast, consists of the failure to exercise ordinary care." *Id.* (internal quotations, modifications and citations omitted). Thus, liability under negligence arises from "heedlessness, inattention, and inadvertence." *Id.* (internal quotations, modifications and citations omitted).

Plaintiff's allegations undoubtedly state a claim arising out of battery, not negligence. First, Plaintiff sets forth several allegations demonstrating that Cain "engaged in volitional activity," namely that: (1) Cain "modified" the alarm or horn on his truck to make an "unusually loud noise," (Compl. ¶ 13); (2) Cain "caused a loud alarm or horn to sound a second time" after Plaintiff approached Cain's truck, (Compl. ¶ 15); (3) Cain "admitted to causing the horn activation using the 'Alarm' feature on his key remote control," (Compl. ¶ 25); and, (4) Cain "intended to play a practical joke on [Plaintiff] when he activated his Truck horn or alarm," (Compl. ¶ 28). These allegations do not demonstrate "heedlessness, inattention, and inadvertence," but describe clearly volitional conduct of the sort that Congress intended to exclude from the FTCA's waiver of sovereign immunity.

10

Plaintiff's allegations also demonstrate that Cain intended to violate the legally protected interest of Plaintiff in his person. As the Virginia Supreme Court explained in *Mayr*, "[b]attery protects two personal interests: 'first, the interest in the physical integrity of the body, that it be free from harmful contacts; second, the purely dignitary interest in the body that it be free from offensive contact.'" 795 S.E.2d at 736 (quoting 1 Fowler V. Harper, *et al.*, Gray on Torts § 3.2 (3d ed. 2006)). On the other hand, "'[t]he purpose of imposing tort liability for negligence is . . . to encourage individuals to exercise reasonable care.'" *Id.* (quoting *United States v. Wright*, 777 F.3d 635, 641 (3d Cir. 2015)). Cain may have not intended to cause physical harm to Plaintiff, but he clearly intended to violate Plaintiff's dignitary interest in being free from offensive contact. And vicarious recovery against the Government for Cain's conduct would not encourage Cain to exercise reasonable care in the future, because Cain acted intentionally. Plaintiff's claims sound in intentional tort, not negligence. The Court will not allow him to proceed simply because he brings his battery or assault claims under a theory that Virginia ultimately may not recognize.

Accordingly, despite Plaintiff's framing of Cain's conduct, the Court finds that, in substance, Plaintiff's claims arise out of assault or battery such that the FTCA does not waive Defendant's sovereign immunity in this instance. § 2680(h). Whether Plaintiff could succeed against Cain for assault or battery constitutes an entirely separate issue that the Court need not address at this time.

### IV.  CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant's Motion to Dismiss (ECF No. 9) and DISMISSES WITH PREJUDICE all claims by Plaintiff for direct liability

11

against Defendant and DISMISSES WITHOUT PREJUDICE all claims by Plaintiff for vicarious liability against Defendant.[1] An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Date: January 14, 2020

---

[1] The Court dismisses with prejudice Plaintiff's claims for direct liability against Defendant, because, as mentioned, Plaintiff concedes that he cannot state such claims based on the facts in this case. (Pl.'s Resp. at 2); *see Jensen v. W. Carolina Univ.*, 2012 WL 5439144, at *5 (W.D.N.C. Nov. 7, 2012) (finding dismissal with prejudice of Title VII claim appropriate when the plaintiff conceded that "no Title VII claim exists on the facts of this case").